**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MICHAEL PICKERING, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | |
| *v.* | Case No. 12-cv-6256 |
| ADP DEALER SERVICES, INC., a Delaware corporation, THE COBALT GROUP, INC., a Washington corporation, AUTOTEGRITY, INC., a Delaware corporation, UPSURGE MEDIA GROUP, LLC, a Delaware limited liability company, and EFLOW MEDIA LLC, a California limited liability company | **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## CLASS ACTION COMPLAINT

Plaintiff Michael Pickering brings this class action complaint against Defendants ADP Dealer Services, Inc. ("ADP"), The Cobalt Group, Inc. ("Cobalt"), Autotegrity, Inc. ("Autotegrity"), UpSurge Media Group, LLC ("UpSurge"), and eFlow Media LLC ("eFlow") (collectively "Defendants"), to stop Defendants' practice of making unsolicited text message calls to cellular telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation condgggggucted by his attorneys.

### NATURE OF THE ACTION

1.      Defendants act cooperatively to make unsolicited spam text message calls promoting the sale of automobiles to thousands of consumers nationwide for their joint monetary benefit. Defendants are all active participants in the business of automobile sales lead generation,

1

and specifically, each play a part in driving consumer traffic to www.auto-price-finder.com, wherein consumer leads are collected and sold to car dealerships. To that end, Defendants make, or have made on their behalf, text message calls asking "Need a new car?" and indicating that a "friend" or "someone near you" sent a "great deal on a car" at "clearance pricing." These inducements are, of course, false, and only meant to push consumers to Defendants' information collection website.

2.     Defendants repeatedly made (or directed to be made on their behalf) unsolicited text message calls to Plaintiff's and putative Class member's cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

3.     Neither Plaintiff Pickering, nor the other members of the proposed Class, ever provided their cellular telephone numbers to Defendants for any purpose, let alone consented to have Defendants make text message calls to their phones.

4.     By making the text message calls at issue in this complaint, Defendants caused Plaintiff and the members of the class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text message calls, and the monies paid to their wireless carriers for the receipt of such text message calls.

5.     In response to Defendants' unlawful conduct, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited text message calling activities and an award of statutory damages to the members of the class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

6.     Plaintiff Michael Pickering is a natural person domiciled in the State of Texas.

7.     Defendant ADP Dealer Services, Inc. is a corporation incorporated and existing

under the laws of the State of Delaware with its principal place of business located at 1950

Hassell Rd., Hoffman Estates, Illinois 60169. Defendants The Cobalt Group and Autotegrity are

closely associated subsidiaries and/or divisions of ADP Dealer Services, and all three companies

share common executives. ADP Dealer Services, Inc. does business throughout the United

States, the State of Illinois and in this District.

8.      The Cobalt Group is a corporation incorporated and existing under the laws of the

State of Washington with its principal place of business located at 605 Fifth Avenue South, Suite

800, Seattle, Washington 98104. The Cobalt Group is a closely associated subsidiary and/or

division of Defendant ADP Dealer Services, and The Cobalt Group additionally shares

executives with both ADP Dealer Services and Autotegrity. The Cobalt Group does business

throughout the United States, the State of Illinois and in this District.

9.      Defendant Autotegrity, Inc. is a corporation incorporated and existing under the

laws of the State of Delaware with its principal place of business located at 198 Broadway

Cambridge, Massachusetts 02139. Autotegrity is a closely associated subsidiary and/or division

of Defendant ADP Dealer Services, and Autotegrity additionally shares executives with both

ADP Dealer Services and The Cobalt Group. Autotegrity does business throughout the United

States, the State of Illinois and in this District.

10.     Defendants ADP Dealer Services, The Cobalt Group, and Autotegrity jointly form

the automotive marketing division of Automatic Data Processing, Inc., their non-party parent

corporation.

11.     Defendant UpSurge Media Group LLC is a limited liability company incorporated

and existing under the laws of the State of Delaware with its principal place of business located

at 226 Fifth Ave, 2nd Floor, New York, New York 10001. Upsurge does business throughout the

3

United States, the State of Illinois and in this District.

12.     Defendant eFlow Media LLC is a limited liability company incorporated and existing under the laws of the State of California with its principal place of business located at 4150 Mission Blvd., Suite 216, San Diego, California 92109. eFlow does business throughout the United States, the State of Illinois and in this District.

## JURISDICTION AND VENUE

13.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.

14.     The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants transact significant amounts of business within this District and the conduct and events giving rise to Plaintiff's claims arose in substantial part in this District. Venue is additionally proper because Defendant ADP Dealer Services is headquartered here.

## COMMON FACTUAL ALLEGATIONS

15.     In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to transmit bulk solicitations cheaply.

16.     One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text message calls (usually no more than 160 characters) to and from cellular telephones.

17.     SMS message calls are directed to a wireless device using the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell

phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

18.     According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—made directly to user's cell phones." In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone." Amanda Lenhart, *Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens*, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited June 17, 2012).

19.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because cell phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

20.     Beginning at least as early as June 2012, Defendants made (and/or had made on their behalf), and presently continue to make, text message calls to Plaintiff's and the Class members' cell phones without consent.

21.     Defendants obtained Plaintiff and the Class members' cell phone numbers by purchasing lists of phone numbers from a third party and/or simply dialing numbers at random.

22.     On July 19, 2012, Defendants made, or had made on their behalf, the following text message call to Plaintiff's cell phone:

> Need a New Car? See which dealers may offer discounts & clearance pricing. Go to http://www.autodealfinder.com.llhf.net for free Service. It's fast and easy!

23.    Defendants made, or had made on their behalf, the above text message call to Plaintiff from the phone number (229) 848-4252.

24.    Plaintiff was not in the market for a car, did not express an interest in receiving information about buying a car to any person or entity, including Defendants, and Plaintiff did not submit his phone number to any entity, including Defendants, which indicated he would receive text message calls at all, let alone text message calls promoting car sales.

25.    Clicking on the link presented in this text message call causes UpSurge's and eFlow's servers[1] to direct a consumer to www.auto-price-finder.com (owned and operated by Defendants ADP, Cobalt, and Autotegrity).

26.    Defendants also made other similarly phrased messages to the putative Class, including but not limited to:

> Your friend just sent you a great deal on a car! Instant quote. Goto http://hiddencarprices.com/?p=3072203565 and enter promo code 2390 to view

---

[1]    The server link, directing a consumer from the link appearing in the text message to www.auto-price-finder.com is:

my.adstrack.net/aff_r?offer_id=1111&aff_id=1826&url=http%3A%2F%2Faffiliate.flwtracker.com%2Frd%2Fr.php%3fsid%3D670%26pub%3D100109%26c1%3D1826&urlauth=62086550576464846368122723869

Broken down, "my.adstrack.net" is a tracking link indicating Defendant UpSurge's participation (by and through its website http://AdsToCash.com), while "affiliate.flwtracker.com" is a tracking link demonstrating Defendant eFlow's invovelment. Likewise, the underlying source code of www.auto-price-finder.com contains the following line of text, utilized to track and confirm payment to Defendants eFlow and UpSurge from Defendants ADP, Cobalt, and Autotegrity:

<!-- eFlowMedia pixel -->
<iframe width='1' height='1' frameborder='0' src=
'http://affiliate.flwtracker.com/rd/ipx.php?hid=&sid=670&transid=103285045'
>
</iframe>

now!

Someone sent you an amazing deal on your favorite car! Instant quote. Goto http:// privatecarprices.com/?p=8594962737 and enter code 8458 to view now!

Someone near you just sent you a great deal on a car! Instant quote. Goto http:// hiddenmotordeals.com/?p=8594962737 and enter promo code 9732 to view now!

27. Defendants made, or had made on their behalf, the text message calls to Plaintiff using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

28. Plaintiff never consented to, requested, or otherwise desired or permitted Defendants to make text message calls to his cellular phone, nor did Plaintiff provide Defendants with his cellular telephone number.

29. Defendants made, or had made on their behalf, the same (or substantially the same) text message call *en masse* to a list of cellular telephone numbers or randomly generated phone numbers. Each unsolicited text message call inquired "Need a new car" and/or indicated that a "friend" or "someone near you" had sent the recipient a link for a "great" or "amazing" deal on "your favorite car" at "clearance prices"—and contained a website URL where consumers could purportedly view the offer.

30. Each of the URL's contained in Defendants' text message calls (including but not limited to http://www.autodealfinder.com.llhf.net, http://hiddenmotordeals.com, http://hiddenautodeals.com, http://privatecarprices.com, http://hiddencarprices.com, http://secretcardeals.mobi) direct consumers to the same destination: www.auto-price-finder.com.

31. On information and belief, the websites http://www.autodealfinder.com.llhf.net, http://hiddenmotordeals.com, http://hiddenautodeals.com, http://privatecarprices.com,

http://hiddencarprices.com, http://secretcardeals.mobi, and similar related websites directing traffic to www.auto-price-finder.com, are owned and/or operated by Defendants UpSurge and eFlow, or are operated directly on their behalf and/or at their direction.

32. Defendants UpSurge and eFlow, or third parties acting directly on their behalf, utilize a third party domain registration company to mask from public view the true owner and operator of these websites in order to avoid detection and liability for their conduct.

33. The website www.auto-price-finder.com is jointly owned and/or operated by Defendants ADP, Cobalt, and Autotegrity.

34. Defendants eFlow and Upsurge are paid directly by Defendants ADP, Cobalt, and Autotegrity for each consumer they deliver from the above described text message call to www.auto-price-finder.com. Accordingly, all Defendants are beneficiaries of the text message calls that Plaintiff and putative Class members received.

35. Defendants each were aware that the above described text message calls were being made either by them directly, or made on their behalf, and that the text message calls were being made to consumers who had not consented to receive them.

## CLASS ALLEGATIONS

36. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class (the "Class") defined as follows:

> All individuals in the United States who received a text message call on their cellular telephone made by or on behalf of Defendants that contained a link leading to www.auto-price-finder.com.

37. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have made text message calls to tens of thousands of consumers who fall into

the definition of the Class. Class members can be identified through Defendants' records.

38.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited text message calls.

39.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

40.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)     whether Defendants' conduct constitutes a violation of the TCPA;

(b)     whether the equipment Defendants used to make the text message calls in question was an automatic telephone dialing system as contemplated by the TCPA;

(c)     whether Defendants systematically made text message calls to persons who did not previously provide Defendants with their prior express consent to receive such text message calls;

(d)     whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct.

41.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of

this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

<u>COUNT I</u>

**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

42.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

43.    Defendants and their agents made unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class *en masse* without their prior express consent.

44.    Defendants made the text message calls, or had them made on their behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

45.    Defendants and their agents utilized equipment that made, or had made on their behalf, the text message calls to Plaintiff and other members of the Class simultaneously and

without human intervention.

46.     By making, or having made on their behalf, the unsolicited text message calls to Plaintiff and the Class, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited text message calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

47.     Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

<center>**PRAYER FOR RELIEF**</center>

WHEREFORE, Plaintiff Michael Pickering, individually and on behalf of the Class, prays for the following relief:

1.     An order certifying the Class as defined above, appointing Plaintiff Michael Pickering as the representative of the Class, and appointing his counsel as Class Counsel;

2.     An award of actual and statutory damages;

3.     An injunction requiring Defendants to cease all unsolicited text message calling activities, and otherwise protecting the interests of the Class;

4.     An award of reasonable attorneys' fees and costs; and

5.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated:  August 8, 2012

**MICHAEL PICKERING**, individually and on behalf of all others similarly situated,

By: _____
One of Plaintiff's Attorneys

Jay Edelson
Rafey S. Balabanian
Christopher L. Dore
Benjamin H. Richman
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 589-6380
jedelson@edelson.com
rbalabanian@edelson.com
cdore@edelson.com
brichman@edelson.com

Stefan Coleman, Esq. (Admission *Pro Hac Vice* to be filed)
LAW OFFICES OF STEFAN COLEMAN, PLLC
1072 Madison Avenue, Suite 1
Lakewood, NJ 08701
Telephone: (877) 333-9427
law@stefancoleman.com