# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL PICKERING, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) ADP DEALER SERVICES, INC., f/k/a THE ) COBALT GROUP, INC., AUTOTEGRITY, ) INC., UPSURGE MEDIA GROUP, LLC, ) EFLOW MEDIA LLC, SWAHA MEDIA LLC, ) ADVERT MARKETING INC., and ) ADSOURCE MARKETING, LTD., ) ) Defendant. ) | Case No. 12 C 6256 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Michael Pickering has brought a class action complaint against Defendants ADP Dealer Services, Inc., The Cobalt Group, Inc., Autotegrity, Inc., UpSurge Media Group, LLC, eFlow Media LLC, Dedicated Media, Inc., Swaha Media LLC, Advert Marketing, Inc., and Adsource Marketing, Ltd., seeking to enjoin defendants' alleged practice of making unsolicited text message calls to consumers' cellular telephones and to obtain damages for those injured by defendants' conduct. eFlow has moved to dismiss for lack of personal jurisdiction and improper venue. For the reasons set forth below, the Court grants the motion.

## Background

eFlow's core business is the generation of sales leads for companies through the

use of its publisher network.  eFlow solicits business from advertisers who are looking to increase sales.  eFlow then pairs those advertisers with publishers to generate leads.  Publishers are tasked with sending advertising information to possible consumers.  This is usually done through e-mails and website banner ads.  eFlow is paid by the advertisers on a per-lead basis.  eFlow markets itself to potential advertisers and publishers through online marketing on its own interactive website and passive marketing via social media such as Facebook and Twitter.

The majority of eFlow's publishers apply to be part of eFlow's network through the company's website.  The website permits prospective publishers to apply to be a part of eFlow's network by submitting contact information and an overview of the prospective publisher's activities.  The website also permits advertisers to contact eFlow and submit similar information.  However, most advertisers contact eFlow by telephone first.  The website is accessible nationally.

In June 2011, eFlow contracted with Autotegrity, located in Wakefield, Massachusetts, to use eFlow's publishers to advertise the www.auto-price-finder.com website ("Price Finder").  Autotegrity is a wholly owned subsidiary of ADP.  ADP is headquartered in and has its principal place of business in Illinois.  In or around January 2012, UpSurge – whose principal place of business is in New York – contacted eFlow about joining eFlow's publisher network.  eFlow and UpSurge reached an agreement shortly thereafter.  In or around July 2012, UpSurge, as one of eFlow's publishers, began promoting Price Finder.  The advertising campaign was national in scope and did not target any particular state.

eFlow was initially under the impression that the promotion campaign would use

only mobile banners.  A few weeks after UpSurge's start of the campaign, however, eFlow learned that the campaign was using text messages to lure traffic to Price Finder. UpSurge used Dedicated, Swaha, Advert, and AdSource to send text messages on its behalf.  Dedicated's principal place of business is in California; Swaha's principal place of business is in Texas; Advert's principal place of business is in Pennsylvania; and AdSource's principal place of business is in Nova Scotia, Canada.  The text messages were sent *en masse* nationally, with no state targeted specifically.

On July 19, 2012, plaintiff Pickering, who lives in Texas, received a text message on his cell phone advertising Price Finder.  The text message came from the phone number (229) 848-4252 and was unsolicited by Pickering.  On August 7, 2012, eFlow received a cease and desist letter from AT&T.  Pickering filed this suit shortly thereafter. He alleges that defendants sent unsolicited text messages to him and other members of a putative class, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii) ("TCPA").  Pickering seeks an injunction requiring defendants to cease sending all unsolicited text messages; an award of statutory damages; and reasonable attorney's fees and costs.

## Discussion

eFlow has moved to dismiss this case for lack of personal jurisdiction and improper venue.  Once a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of making out a *prima facie case* that jurisdiction exists.  *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the defendant submits affidavits in support of the motion, "the plaintiff must go beyond

3

the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." Id. at 783. Conflicts in the evidence are resolved in favor of the plaintiff. Id.

A federal court has personal jurisdiction over a defendant who is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). The Illinois long-arm statute affords jurisdiction on any basis permitted by the Illinois Constitution or the United States Constitution. *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Federal and Illinois due process requirements are indistinguishable in this context, and as a result, the jurisdictional inquiry involves determining whether the assertion of jurisdiction over the defendant runs afoul of federal due process requirements. *See State of Illinois v. Hemi Group LLC*, 622 F.3d 754, 757 (7th Cir. 2010).

To satisfy due process, Pickering must show that eFlow has minimum contacts with Illinois such that requiring it to answer to a lawsuit here "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). There are two types of personal jurisdiction – general jurisdiction and specific jurisdiction. Pickering argues that both exist in this case.

**1.    General Jurisdiction**

General jurisdiction gives a court the right to hear any and all claims against the foreign defendant regardless of the forum where the events took place. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). In order for a court in a forum to have general jurisdiction over a defendant, that defendant must have "continuous and systematic general business contacts" with the forum. *Id.* Isolated or

4

sporadic contacts with the forum are not sufficient to establish general jurisdiction. *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).

Pickering has failed to show *prima facie* that general jurisdiction is appropriate. General jurisdiction requires eFlow's contacts with Illinois to be sufficiently extensive that eFlow "can be treated as present in the state for essentially all purposes." *uBid*, 623 F.3d at 426. Construing the facts in the light most favorable to Pickering, eFlow's contacts with Illinois are, at most, sporadic. eFlow's only office is in California. It is not registered to do business in Illinois, it has no agents in Illinois, and it has no continuous business relationships with any Illinois entities. eFlow concedes that it had "test relationships" with three different Illinois entities: ClickSor in February 2012; Eagle Web Assets in 2011; and Cash University in April or May 2012. Each of these relationships, however, lasted no more than two months and involved very little money. Following the conclusion of the tests, eFlow had no continued or ongoing relationship with any of these entities.

eFlow's interactive website is also insufficient to establish the type of continuous and systematic presence in Illinois that is required for general jurisdiction. The maintenance of a public Internet site alone is insufficient to justify general jurisdiction. *Tamburo*, 601 F.3d at 701. The Court is unaware of any case, and Pickering has cited none, in which a court has found general jurisdiction simply on the basis of a defendant's website, even when the website was used to make sales directly into the forum state. *See uBid*, 623 F.3d at 426 (finding general jurisdiction lacking although the defendant had extensive and deliberate contacts with Illinois, and used its website to register domain names with customers nationally – including Illinois residents); *Hemi*

*Group LLC*, 622 F.3d at 757 (finding general jurisdiction lacking although the defendant maintained a national website that allowed for purchase from and shipment to Illinois); *Tamburo*, 601 F.3d at 701 (denying general jurisdiction although the defendant had sold three copies of her book to individuals in Illinois through her website).

The Court concludes that eFlow's website and its sporadic business contacts in Illinois are insufficient, even when considered together, to give rise to general jurisdiction in this state.

**2.      Specific Jurisdiction**

A court may assert specific jurisdiction over a defendant if: "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [it]self of the privilege of conducting business in that state, and (2) the alleged injury arises out of forum-related activities that the defendant purposefully directed at the forum state." *Tamburo*, 601 F.3d at 702. If both of these elements are met, "the exercise of personal jurisdiction must also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause." *Id.* In a case like this one involving an intentional tort, the Court "focuses on whether the conduct underlying the claims was purposefully directed at the forum state." *Id.*

Pickering has failed to show *prima facie* that specific jurisdiction over eFlow is appropriate. First, there is no evidence that eFlow purposefully directed its activities at Illinois. eFlow reached out to do business with Autotegrity, whose principal place of business is in Massachusetts, and UpSurge, whose principal place of business is in New York. The only evidence that Pickering offers to show that eFlow had any direct business relationships with Illinois entities involves the three test relationships,

6

described earlier, that eFlow had with ClickSor, Eagle Web Assets, and Cash University. Pickering's claim against eFlow, however, does not arise from any of these business relationships, so they are not appropriately considered for purposes of deciding whether specific jurisdiction exists.

Pickering also argues that eFlow's dealings with Autotegrity, a non-Illinois company that has an Illinois parent, ADP, amounts to purposefully directing conduct at Illinois. Pickering offers no evidence, however, that eFlow ever contacted or worked with ADP directly. Given the applicable legal standard's focus on the defendant's "purposeful[ ]" direction of its activities at the forum state, the absence of any indication that eFlow dealt with an Illinois entity would appear to be fatal to Pickering's argument.

Corporate formalities typically are not disregarded in the personal jurisdiction context. For example, the jurisdictional contacts of a parent company generally are not imputed to its subsidiary, nor are the jurisdictional contacts of a subsidiary generally imputed to its parent. *See Abelesz v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012); *Purdue Research Found.*, 338 F.3d at 788 n.17; *Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). In these scenarios, "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary," *Central States*, 230 F.3d at 943, that is, more than the degree of control that is inherent in a parent-subsidiary relationship. *Purdue Research Found.*, 338 F.3d at 788 n.17.

Pickering has offered no case law or considerations of policy that suggest that a

different rule should apply in the present situation, which is roughly the converse of what was at issue in the cases just discussed. eFlow formed a relationship with Autotegrity, not ADP; there is no indication that ADP was in the picture with respect to that relationship as far as eFlow was concerned. And the record does not indicate that Autotegrity and ADP failed to observe corporate formalities or that ADP had any more control over Autotegrity than is the norm for a parent company.

The purposeful availment element of personal jurisdiction that the Supreme Court has derived from the Due Process Clause requires that to be jurisdictionally significant, a defendant's contacts with the forum must be the result of the defendant's own actions, not "the unilateral activity of another party or third person." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). That is not the case here. Any contacts that eFlow may be claimed to have had with Illinois arising from its relationship with Autotegrity were the result not of eFlow's own conduct but rather derived from the actions – actually, the status – of Autotegrity, specifically, its corporate relationship with ADP.

Because the purposeful availment element required for personal jurisdiction is lacking, the Court need not address the remaining elements of the test for specific jurisdiction. The Court likewise does need not to address eFlow's argument that venue is lacking.

**Conclusion**

For the reasons stated above, the Court grants defendant eFlow's motion to dismiss for lack of personal jurisdiction and terminates as moot its motion to dismiss for improper venue [docket nos. 25 & 26]. Plaintiff's claims against defendant eFlow

8

Media, LLC are dismissed for lack of personal jurisdiction.

                                                              _____
                                                                 MATTHEW F. KENNELLY
                                                                 United States District Judge

Date:  March 13, 2013